IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| NEW PRIME, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:21-03041-CV-RK |
| | ) | |
| FEDERAL INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

# ORDER

Before the Court are (1) Plaintiff New Prime, Inc.'s verified motion for entry of default (Doc. 8), (2) Defendant Federal Insurance Company's motion for leave to file its answer out of time (Doc. 9), (3) Defendant's motion to transfer venue (Doc. 12), and (4) Plaintiff's motion to strike Defendant's motion to transfer venue or alternatively for an extension of time to respond (Doc. 17). For the reasons set forth below, Plaintiff's motion for entry of default is **GRANTED**; Defendant's motion for leave to file its answer out of time is **DENIED**; Defendant's motion to transfer venue is **DENIED as moot**; and Plaintiff's motion to strike Defendant's motion to transfer venue or alternatively for an extension of time to respond is **DENIED as moot**.

## Background

The Court draws the following background from the allegations in the petition for declaratory judgment. (Doc. 1-1.)

On or about August 5, 2014, Christine John ("John") and Christopher Lewis ("Lewis") filed a lawsuit in Harris County, Texas against Plaintiff and its alleged employee, Roberto Alonzo ("Alonzo"). John and Lewis claimed they were injured in an accident on September 21, 2012 when Alonzo allegedly drove a large diesel truck negligently into the vehicle in which John and Lewis were travelling causing severe bodily injuries to both. John and Lewis alleged the truck driven by Alonzo was owned and operated by Plaintiff. That lawsuit was filed in the 129th District Court of Harris County, Texas, was styled *Christine John and Christopher Lewis v. New Prime, Inc. and Robert Alonzo*, and was assigned Case No. 2014-44841 ("Underlying Lawsuit"). The Underlying Lawsuit was called for a jury trial beginning on September 24, 2019, and the jury returned a verdict in favor of John and Lewis and against Prime in the amount of $12,450,000.

During the relevant timeframe, Plaintiff was a policyholder under an excess insurance policy issued by Defendant (Federal Insurance Company Commercial Excess Follow-Form Insurance Policy No. 7946-54-89 "Federal Policy"). The Federal Policy provides excess insurance coverage in the aggregate amount of $3,000,000 for certain losses exceeding the underlying insurance coverage and Plaintiff's self-insured retention. For the loss at issue in the Underlying Lawsuit, Plaintiff had the following coverage: (1) a self-insured retention of $3,000,000 and (2) an RLI Insurance Company issued Excess Indemnity Policy No. LET0010121 ("RLI Policy") that provided insurance coverage in the amount of $2,000,000 in excess of Plaintiff's self-insured retention for losses sustained by Plaintiff during the relevant time period. The Federal Policy provided excess insurance coverage for loss sustained by Plaintiff and covered by the RLI Policy in excess of the upper limit of the RLI Policy. The Federal Policy follows the form of the RLI Policy.

Until the jury returned its verdict in the Underlying Lawsuit, both Plaintiff and RLI Insurance Company had believed that the judgment in the Underlying Lawsuit would not exceed the upper limit of the RLI Insurance Policy's coverage and would, thus, not trigger coverage under the Federal Policy. When the jury returned its verdict in the Underlying Lawsuit in an amount sufficient to trigger coverage under the Federal Policy on September 30, 2019, Plaintiff immediately began preparing formal notice of the claim and demand for coverage from Defendant. On October 2, 2019, Plaintiff sent formal notice and a demand for coverage of the loss to Defendant. Despite Plaintiff's formal notice and demand for coverage from Defendant for the amount of the loss exceeding $5,000,000, Defendant refused and continues to refuse coverage of the loss under the Federal Policy.

Plaintiff filed a petition for declaratory judgment in the Circuit Court of Greene County, Missouri on January 18, 2021. Defendant received valid service of process of the summons and Petition on February 1, 2021, by a process server's personal service of the petition on Defendant's authorized agent, the Missouri Division of Insurance, as well as by service of the petition on the attorney representing Defendant at that time. On February 17, 2021, Defendant filed its notice of removal, in which Defendant expressly acknowledges its receipt of service of process on February 1, 2021.

The following motions are before the Court:

- Plaintiff's verified motion for entry of default (Doc. 8);

- Defendant's motion for leave to file its answer out of time (Doc. 9);
- Defendant's motion to transfer venue (Doc. 12); and
- Plaintiff's motion to strike Defendant's motion to transfer venue or alternatively for an extension of time to respond (Doc. 17).

## Discussion

### I. Motion for Entry of Default and Motion for Leave to File Answer Out of Time

On March 5, 2021, Plaintiff filed its verified motion for entry of default (Doc. 8), arguing Defendant was required to answer or present other defenses or objections under Rule 81(c)(2) "within 7 days after" filing the notice of removal, i.e. by February 24, 2021, and thus entry of default was appropriate pursuant to Rule 55(a). Defendant filed its opposition to the entry of default, arguing its default was the result of excusable neglect, it has a meritorious defense, and Plaintiff will not be prejudiced by the Court refusing to allow a Clerk's entry of default and allowing Defendant to file its answer. Defense counsel's explanation of his neglect was that he relied on the docket showing the return of service as filed February 9, 2021, attached with the removal, and failed to confirm the service date. Defense counsel also considered that Rev. Stat. Mo. § 375.271 might apply to effectively extend the time to answer or file a responsive pleading, and promptly attempted to contact Plaintiff's counsel regarding an extension but was unsuccessful in reaching an agreement to an extension.

Plaintiff filed a reply in support of its motion for entry of default in the same document as its opposition to Defendant's motion for extension of time. Plaintiff argues (1) rather than the excusable neglect Defendant asserts, Defendant actually neglected to file a timely answer as a "strategy to delay this case," (2) its delay tactics will serve Defendant's improper purpose of forcing Plaintiff into a forum other than the one it selected, and (3) this will prejudice Plaintiff. Plaintiff argues that when Defendant filed a "mirror-image lawsuit" in federal court in Texas thirty days after this case was filed and before seeking to avoid default in this case, it intended to engage in a "race to *res judicata*."[1]

---

[1] A "'race for *res judicata*,' [is] a race to invoke a prior judgment in litigation involving 'the same cause of action and the same parties or their privies.'" *Scottsdale Ins. Co. v. Detco Indus., Inc.*, 426 F.3d 994, 1000 (8th Cir. 2005) (quoting *Aetna Cas. & Sur. Co. v. Ind–Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir.1998) (per curium)).

Defendant filed its motion for leave to file its answer out of time on March 8, 2021, attaching its answer. (Doc. 9.) Defense counsel relied on the docket showing the return of service as filed February 9, 2021, attached with the removal, and failed to confirm the service date. Defense counsel also considered that § 375.271 of the Revised Statutes of Missouri might apply to effectively extend the time to answer or file a responsive pleading.[2] Defense counsel attempted to contact Plaintiff's counsel regarding an extension but was unsuccessful. Plaintiff, though aware of defense counsel's efforts and involvement, filed its motion for entry of default. Immediately thereafter, defense counsel spoke with Plaintiff's counsel, requested that the motion for entry of default be withdrawn, and was informed that Plaintiff would be consulted but that withdrawal would be unlikely. Defendant's motion to file its answer out of time asserts no party will be prejudiced by granting its motion for leave to file its answer out of time.

As mentioned above, Plaintiff argues in response that rather than the excusable neglect Defendant asserts, Defendant actually neglected to file a timely answer as a "strategy to delay this case," and its delay tactics will serve its improper purpose of forcing Plaintiff into a forum other than the one it selected, to its prejudice. In its reply, Defendant argues the declaratory judgment it filed in federal court in Texas was filed to include a necessary party not named in this case. Defendant further argues its failure to timely answer in the case at bar was not for the purpose of delaying the proceeding, but rather the result of a diary error calculated on the state court statute involving service on the Department of Insurance, Rev. Stat. Mo. § 375.271.

> The Federal Rules of Civil Procedure require a defendant to answer or present other defenses or objections under these rules within the longest of these periods:
>
>> (A) 21 days after receiving--through service or otherwise--a copy of the initial pleading stating the claim for relief;
>>
>> (B) 21 days after being served with the summons for an initial pleading on file at the time of service; or
>>
>> (C) 7 days after the notice of removal is filed.

---

[2] Section 375.271 of the Revised Statutes of Missouri provides:

No plaintiff shall be entitled to a judgment against the defendant by default under this section until after the expiration of forty-five days from the date of service of summons with copy of plaintiff's petition thereto attached upon the director of the department of commerce and insurance, his deputy or chief clerk as provided in section 375.261, or upon either of the persons referred to in section 375.266.

4

Fed. R. Civ. P. 81(c)(2).  "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk *must* enter the party's default."  Fed. R. Civ. P. 55(a) (emphasis added).  Federal Rule of Civil Procedure 6(b), however, permits the Court to "for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."  Fed. R. Civ. P. 6(b).

"Excusable neglect is an 'elastic concept' that empowers courts to accept, 'where appropriate, . . . late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.'" *Chorosevic v. MetLife Choices*, 600 F.3d 934, 946 (8th Cir. 2010) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993)).  "The determination of whether neglect is excusable 'is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.'"  *Id.* (quoting *Pioneer Inv. Servs. Co.*, 507 U.S. at 395.  "'[T]he following factors are particularly important: (1) the possibility of prejudice to [Plaintiff]; (2) the length of [Defendant's] delay and the possible impact of that delay on judicial proceedings; (3) [Defendant's] reasons for delay, including whether the delay was within [its] reasonable control; and (4) whether [Defendant] acted in good faith."  *Id.* (quoting *Sugarbaker v. SSM Health Care*, 187 F.3d 853, 856 (8th Cir.1999)).  The reason for delay is the "critical inquiry" in the excusable neglect determination, but the determination also needs to account for the judicial disfavor for default dispositions.  *Gibbons v. United States*, 317 F.3d 852, 855 n.4 (8th Cir. 2003).  Because the reasons for delay, including whether the delay was within Defendant's reasonable control is the "critical inquiry," it is addressed first.

**A. Defendant's Reasons for Delay**

Here, Defense counsel's explanation was that he relied on the docket showing the return of service as filed February 9, 2021, attached with the removal, and failed to confirm the service date.  Defense counsel also indicated he considered that Rev. Stat. Mo. § 375.271 might apply to effectively extend the time to answer or file a responsive pleading.

It is unclear to the Court, and Defendant fails to plausibly explain, however, why Defendant thought Rev. Stat. Mo. § 375.271 might apply when it had chosen to remove the case to federal court, triggering the application of Federal Rule of Civil Procedure 81(c).  Defendant also fails to show how a mistaken belief that service was accepted February 9, rather than February 1, would

5

excuse Defendant's failure to answer or file responsive pleading by March 2 (21 days after February 9, Rule 81(c)(2)(A)).

Accordingly, the Court finds the reasons provided by Defendant in an attempt to justify the delay are implausible and weigh against a determination that Defendant's neglect was excusable.

### B. Possibility of Prejudice to Plaintiff

Defendant argues that because Plaintiff filed its motion for entry of default only seven calendar days from the date Defendant's answer or responsive pleading was due, and at the time Defendant was trying to contact Plaintiff "to work out this issue without the intervention of this Court[,]" as well as the fact that discovery has yet to begin, no prejudice will occur. Defendant further argues that the lawsuit it filed in Texas after the initiation of the present lawsuit by Plaintiff and Defendant's intention to transfer and consolidate this case with that one is not a "race to acquire a judgment in the Texas case by delaying the current action."

Plaintiff argues that the delay "risk[s] imposing substantial prejudice by thwarting [Plaintiff's] 'plaintiff's venue privilege,' i.e., [Plaintiff's] right to litigate this dispute in its preferred forum[,]" and the risk arises because "if [Defendant] were allowed to succeed in slowing this case down while moving the Texas action to judgment before this one, it may win the 'race to *res judicata*' which it has improperly started to run, and thereby render the proceedings in this case a mere legal nullity."

Due to the reasonable concerns raised by Plaintiff, this factor weighs against a finding of excusable neglect.

### C. Length of Defendant's Delay and Possible Impact on Judicial Proceedings

Defendant sought leave to file out of time twelve days after its answer was due and before discovery had begun. This relatively insubstantial delay and Defendant's prompt actions to move forward with the instant proceedings upon Plaintiff's filing of its motion for entry of default weigh in favor of a determination of excusable neglect.

### D. Whether Defendant Acted in Good Faith

The Eighth Circuit has "consistently sought to distinguish between contumacious or intentional delay or disregard for deadlines and procedural rules, and a 'marginal failure' to meet pleading or other deadlines." *See Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 784 (8th Cir. 1998). Here, it is unclear whether Defendant acted in bad faith. Defendant's asserted reasons amount to "'inadvertence, mistake, or carelessness,'" *Chorosevic*, 600 F.3d at 946 (quoting

6

*Pioneer Inv. Servs. Co.*, 507 U.S. at 392), however "[t]he determination of whether neglect is excusable 'is at bottom an equitable one, taking account of *all relevant circumstances* surrounding the party's omission.'" *Id.* (quoting *Pioneer Inv. Servs. Co.*, 507 U.S. at 395) (emphasis added). The additional relevant circumstances of the Texas federal court mirror-image case that Defendant chose to file thirty days after Plaintiff filed this case and before preventing or curing its default in this case affect this equitable consideration and obfuscate the determination of whether Defendant acted in good faith. As pointed out by Plaintiff, Defendant does not plausibly explain why, rather than just filing for transfer of this case and adding the necessary party not named in this case upon transfer, it chose to file the separate, duplicative Texas case and allow its default this case.

This factor appears to weigh against a finding of excusable neglect.

### E. Defendant Fails to Establish Excusable Neglect

In consideration of the mandatory nature of rule 55(a), weighing the above-listed factors, giving the reason for delay the most weight, and balancing these factors with the judicial disfavor for default dispositions, the Court finds Defendant has not established excusable neglect. Accordingly, Plaintiff's motion for entry of default is **GRANTED** and Defendant's motion for leave to file answer out of time is **DENIED.**

### Conclusion

Accordingly, the Court **ORDERS** as follows:

1. Plaintiff's verified motion for entry of default (Doc. 8) is **GRANTED**.
2. Defendant's motion for leave to file its answer out of time (Doc. 9) is **DENIED**.
3. Defendant's motion to transfer venue (Doc. 12) is **DENIED as moot**.
4. Plaintiff's motion to strike Defendant's motion to transfer venue or alternatively for an extension of time to respond (Doc. 17) is **DENIED as moot.**

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: May 19, 2021