# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHWESTERN DIVISION

| | |
|---|---|
| NEW PRME, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 6:21-03041-CV-RK |
| | ) |
| FEDERAL INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is a motion for summary judgment filed by Defendant Federal Insurance Company. (Doc. 123.) The motion is fully briefed. (Docs. 125, 129, 132.) For the reasons below, the motion is **DENIED**.

## Background

This lawsuit stems from Plaintiff New Prime, Inc.'s excess insurance policy (the "Chubb Policy") issued by Defendant Federal Insurance Company's parent company, Chubb Insurance Company. (Doc. 125-3.) Plaintiff had a self-insured retention of $3,000,000 and an excess insurance policy of $2,000,000 issued by RLI Insurance Company. (Doc. 125-2 at 1.) The Chubb Policy provided excess coverage of $3,000,000 for losses sustained in excess of the RLI Policy and Plaintiff's self-insured retention. (Doc. 125-3 at 2-3.)

The relevant provisions of the Chubb Policy are as follows:

A. You must see to it that we and any insurers of underlying insurance are notified as soon as practicable of any occurrence or offense that may result in a claim, if the claim may involve us or any other insurer.

H. If a claim or loss does not reasonably appear to involve either this insurance or any underlying insurance, but it later develops into a claim or loss to which this insurance applies, the failure to report it to us will not violate this condition, provided the insured gives us immediate notice as soon as the insured is aware that this insurance may apply to such claim or loss.

(*Id.* at 17-18.)

On September 21, 2012, Robert Alonzo, an employee of Plaintiff, allegedly drove into Christine John and Christopher Lewis's vehicle while driving a large diesel truck owned and operated by Plaintiff. (Doc. 125-1 at 3.) Both Ms. John and Mr. Lewis suffered from soft-tissue injuries following the accident. (Doc. 129-2 at 8-16; Doc. 192-3 at 8-39). In September 2014, Ms. John and Mr. Lewis filed suit against Plaintiff and Mr. Alonzo in Harris Country, Texas (the "Underlying Action"), seeking "monetary relief over $200,000 but not more than $1,000,000." (Doc. 125:1 at 2.)

Throughout litigation, numerous settlement attempts were made. The plaintiffs made demands in 2015, 2016, and 2017, none of which exceeded an aggregate settlement amount of $2,800,000. (Docs. 129-6, 129-7, 130-7, 130-8) However, after the plaintiffs acquired new representation, in January 2019, the plaintiffs demanded $6 million to settle. (Doc. 130-12 at 1.)

The case proceeded to trial, and in September 30, 2019, a jury awarded the plaintiffs $12,450,000 in damages. (Doc. 129.) On October 2, 2019, Plaintiff New Prime, Inc. formally notified Chubb of the Underlying Action. (Doc. 1-1 at 119.) Chubb denied coverage of the claim. (Doc. 1-1 at 127.)

Plaintiff later filed its petition seeking declaratory judgment that the Chubb Policy covered the losses sustained in the Underlying Action in state court and Defendant removed the case to this Court.

**Legal Standard**

"Summary judgment is required if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. Ins. Co. v. Great Am. Ins. Co.*, 893 F.3d 1098, 1102 (8th Cir. 2018) (citations and quotation marks omitted). A fact is material in this context when it "might affect the outcome of the suit under the governing law," and a genuine dispute is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A moving party is 'entitled to judgment as a matter of law' if the nonmoving party fails to make a sufficient showing of an essential element of a claim with respect to which it has the burden of proof." *Woodsmith Pub. Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir. 1990) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) (other citation omitted). In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the nonmoving party and giv[es] the nonmoving party the benefit of all reasonable inferences." *Id.* (quotation marks and citation

2

omitted). At the summary judgment stage, the movant must "support" its motion either by "citing to particular parts of materials in the record" or by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325; *see* Fed. R. Civ. P. 56(c)(1).

In resisting summary judgment, the nonmoving party may not rest on the allegations in its pleadings, but must, by affidavit and other evidence, set forth specific facts showing that a genuine issue of material fact exists. Rule 56(c); *see also Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007) (mere allegations, unsupported by specific facts or evidence beyond a nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment). An "adverse party may not rely merely on allegations or denials, but must set out specific facts – by affidavits or other evidence – showing [a] genuine issue for trial." *Tweeton v. Frandrup*, 287 F. App'x 541, 541 (8th Cir. 2008) (citing Fed. R. Civ. P. 56(e)). In so doing, the nonmoving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citation omitted).

## Discussion

Defendant contends it is entitled to summary judgment because Plaintiff "failed to notify [Defendant] of the Underlying Action until after a verdict was entered." (Doc. 125 at 8.) Additionally, Defendant argues it was denied the right to participate in the defense of the underlying action, which was prejudicial. (Doc. 125 at 12-13.) Plaintiff disagrees, arguing it did not fail to notify Defendant because Plaintiff reasonably believed the underlying action was not reasonably likely to trigger the Chubb Policy. (Doc. 129 at 17.)

Missouri law "treats the failure of an insured to provide timely notice to the insurer as an affirmative defense." *Weaver v. State Farm Mut. Auto Ins. Co.*, 936 S.W.2d 818, 821 (Mo. banc 1997). As such, Defendant has the burden in establishing: (1) Plaintiff "violated the policy condition" and "failed to submit a proof of loss to [D]efendant in the time prescribed by the policy; and (2) "[D]efendant was thereby prejudiced." *Weaver*, 936 S.W.2d at 821 (quoting Missouri Approved Instruction 32.24).

"The determination of whether an insured provided prompt notice to its insurer is normally an issue of fact, but it may become a question of law where 'all reasonable persons would conclude that notice or proof was not given or made within [a reasonable time]." *Green Tree Serv., LLC v. Chi. Title Ins. Co.*, 499 S.W.3d 771, 776 (Mo. Ct. App. 2016). Alternatively, "when the facts

3

bearing on the issues of whether an insured provided notice to the insurer within a reasonable time and whether the insurer suffered substantial prejudice as a result are not disputed, then the notice issues reflect questions of law." *Sherman v. Mo. Pros. Mut.-Physicals Pro. Indem. Ass'n*, 599 S.W.3d 207, 219 (Mo. Ct. App. 2020); *Columbia Cas. Co. v. Hiar Holding, LLC*, 411 S.W.3d 258, 272 (Mo. banc 2013). Here, Defendant has set forth sufficient undisputed material facts such that this is a question of law. The Court finds that notice was not given within a reasonable time.

The Chubb Policy required notice to Defendant "as soon as practicable of any occurrence or offense that may result in a claim" that "may involve us or other insurers." (Doc. 125-3 at 17.) Missouri courts construe similar conditions as to require notice "within a reasonable time." *Johnson v. Sweany*, 68 S.W.3d 398, 401 (Mo. banc 2002); *Tresner v. State Farm Ins. Co.*, 913 S.W.2d 7, 10 n.2 (Mo. banc 1995). However, Condition H of the Chubb Policy excuses failure to notify if the claim does not reasonably appear to involve either the Chubb Policy or "any **underlying insurance**, . . . provided that [Plaintifff] gives [Defendant] immediate notice as soon as the insured is aware that this insurance may apply to such claim or loss." (Doc. 125-3 at 18.) The Chubb Policy defines "underlying insurance" as including the RLI Policy. (*Id.* at 3, 21, 22.)

While Plaintiff argues its delay in notifying Defendant until after judgment was entered should be excused under Condition H, Defendant points to several warning signs that alerted Plaintiff that the underlying suit was reasonably likely to trigger the Chubb Policy. (Doc. 132 at 8-9). Defendant argues these warning signs are analogous to those in *Kerr v. Ill. Cent. R.R.*, 670 N.E.2d 759 (Ill. Ct. App. 1996) and contends the Court should find Plaintiff's notice unreasonable as a matter of law. (Doc. 132 at 8-9.)

In *Kerr,* the excess insurance policy provided coverage in excess of the $1.5 million primary policy and required notice to the insurer "upon knowledge of any occurrence likely to give rise to a claim." 670 N.E.2d at 763. The insured did not notify its insurers of the underlying racial discrimination claim until after trial and appeal. *Id.* at 762. Because the notice provision provided discretion to the insured regarding when to give notice, the Illinois appellate court decided it "must determine whether the insured abused the discretion granted to it by the insurer, i.e. whether the insured acted unreasonably under the circumstances." *Id.* at 764 (quoting *Hatford Acc. and Indem. Co. v. Rush-Presbyterian-St. Lukes Med. Ctr.,* 595 N.E.2d 1311, 1316 (Ill. Ct. App. 1992)). Critical to the court's determination that the insured's delay in notice was unreasonable as a matter of law were "several events during the six years prior to [the insured] giving notice which the

4

[trial] court stated would have triggered the obligation to give notice." *Id.* at 766. The court explained that "from the offset, [the insured] viewed this litigation with a significant degree of concern." *Id.* The underlying plaintiffs initially sought compensatory damages of $5 million and punitive damages of $10 million for each of the three counts. *Id.* Additionally, even the insured's expert "set the verdict potential at $2 million" 18 months before trial. *Id.*

Here, the underlying plaintiff's initial petition sought "monetary relief over $200,000 but not more than $1,000,000." (Doc. 125-1 at 2.) Throughout the Underlying Action, the underlying plaintiffs made numerous settlement demands, some of which were less than Plaintiff's $3 million self-insured retention, but then in January 2019, the underlying plaintiffs increased the demand amount to $6 million. (*See* Docs. 129-6, 129-7, 130-7, 130-8, 130-12 at 1.) Plaintiff argues that even then, counsel for the underlying plaintiffs admitted the case was "going to be tough for us to prove because of [Christine's] invisible injuries." (Doc. 124-5 at 1.) Additionally, Plaintiff argues its trial counsel "never advised [Plaintiff] that a verdict in excess of $5 million was possible, let alone reasonably likely." (Doc. 129 at 19.) Rather, Plaintiff's counsel estimated that a potential jury verdict for both underlying plaintiffs could range from $95,000 to $145,000. (*See* Doc. 129-4 at 4.) Defendant contends Plaintiff's decision to hire appellate counsel indicates Plaintiff was aware an excess verdict was possible, though Plaintiff asserts Plaintiff's counsel recommended the appellate counsel "to assist with directed verdict on gross negligence, the charge, the charge conference and other research issues before/during trial." (Doc. 130 at 9.)

The $6 million demand in January 2019 clearly implicated the notice provision of the Chubb Policy. That provision required notice of any occurrence that may result in a claim that may involve "other insurers," and "reasonably appear[ed] to involve . . . any **underlying insurance.**" Specifically, the demand in excess of $5 million would be covered by Plaintiff's self-insured retention plus the RLI Policy limits. As such, the Court finds Plaintiff's notice to Defendant on October 2, 2019, after a jury trial and entry of a jury verdict in September 2019, was unreasonable as a matter of law. Accordingly, the Court turns to the determination of whether the delay in notice prejudiced Defendant.

Under Missouri law, prejudice to the insurer can mean "an insurance company is obligated to pay something as a result of a late claim which it would not have been obligated to pay had the claim been timely" or "that the insurance company was not given a meaningful opportunity to make its own preliminary investigation where such an investigation is called for." *Reid v. Conn.*

5

*General Life Ins. Co.*, 17 F.3d 1092, 1099 (8th Cir. 1994); *see also Sweany*, 68 S.W.3d at 402 (finding prejudice where insurer was "denied [its] opportunity to protect its interests").

Defendant argues it was prejudiced by Plaintiff's late notice under all three approaches outlined by the Missouri Court of Appeals in *Billings Mutual Insurance Company v. Cameron Mutual Insurance Company*, 229 S.W.3d 138, 153 (Mo. Ct. App. 2007). (Doc. 126 at 12.) Plaintiff disagrees, arguing Defendant's "conclusory and/or speculative facts" are insufficient for this Court to find prejudice as a matter of law. (Doc. 129 at 24.)

The Court need not look to *Billings*, however, because recent precedent establishes that Missouri courts will not presume prejudice because of a delay in notice. *Cincinnati Ins. Co. v. Jacob Reiger & Co.*, 58 F.4th 386, 391 (8th Cir. 2023); *see also Tresner*, 913 S.W.2d at 13 (explaining "the general rule in Missouri law rejects the notion that prejudice to the insurer will be conclusively or rebuttably presumed as a matter of law."); *Butterball, LLC v. Great American E&S Ins. Co.*, No. 18-5074-CV-SW-BP, 2019 WL 4888625, at *6 (W.D. Mo. July 9, 2019) (disagreeing with insurer's claims that Missouri law presumes prejudice and shifts the burden to the insured "to overcome the presumption of prejudice where a delay in notice is unexcused.").

Missouri law "treats the failure of an insured to provide timely notice to the insurer as an affirmative defense." *Weaver v. State Farm Mut. Auto Ins. Co.*, 936 S.W.2d 818, 821 (Mo. banc 1997). As such, Defendant has the burden in establishing: (1) Plaintiff "violated the policy condition" and "failed to submit a proof of loss to [D]efendant in the time prescribed by the policy; and (2) "[D]efendant was thereby prejudiced." *Weaver*, 936 S.W.2d at 821 (quoting Missouri Approved Instruction 32.24).

The Missouri Supreme Court analyzed whether the failure of an insured to provide timely notice to an insurer prejudiced the insurer in *Weaver v. State Farm Mutual Auto Insurance Company*. The *Weaver* court considered an affidavit of a claims superintendent, which explained the delay in notice hindered the insurer's ability to investigate physical evidence from the scene, interview several witnesses, and obtain medical records. 936 S.W.2d at at 821-22. Yet, the court determined this was insufficient evidence to determine prejudice as a matter of law because "conclusory allegations are not sufficient to raise a question of fact in summary judgment proceedings." *Id.* (quoting *Austin v. Trotters Corp.*, 815 S.W.2d 951, 953 (Mo. Ct. App. 1991); *Cf. Ralston Purina Co. v. Home Ins. Co.*, 760 F.2d 897, 899 (8th Cir. 1985) (because the insurer presented evidence at trial showing "that the late notice prevented it from confirming coverage,

6

investigating and evaluating the claim's merits, or reviewing the files of the primary insurer and its counsel," the Eighth Circuit "[concluded] that a jury could have found that [the insurer] was prejudiced by the late notice.").

Similarly, Defendant's corporate counsel testified at a deposition that Defendant was denied the opportunity to investigate the claims, participate or collaborate with the insured in their defense of the underlying action, retain counsel to evaluate the underlying action or to defend Plaintiff, and participate in trial strategies and settlement negotiations. (Doc. 125-8 at 13.) Defendant offers no other evidence of how it was prejudiced, and these bare conclusions are insufficient at this stage to determine prejudice as a matter of law.

## Conclusion

Accordingly, the motion for summary judgment filed by Defendant Federal Insurance Company is **DENIED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: July 18, 2023